IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID WALTON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EVERGREEN INTERNATIONAL | : | |
| AVIATION, INC., et al., | : | |
| Defendants. | : | No. 10-2403 |

MEMORANDUM

**GENE E.K. PRATTER**                                                   **DECEMBER 17, 2012**

INTRODUCTION

Plaintiff David Walton has sued his former employer, Evergreen Aviation Ground Logistics Enterprises, Inc. ("Evergreen"), alleging that Evergreen discriminated against him based upon race and subjected him to a hostile work environment and unlawful retaliation. Evergreen has filed a Motion for Summary Judgment which would, if granted, dispose of the case in its entirety. For the reasons set forth below, this Motion will be granted.

FACTUAL AND PROCEDURAL BACKGROUND

For the purposes of this motion, the Court considers whether the record presents any genuine issues of material fact that would allow a reasonable jury to find in favor of Mr. Walton. *See Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (noting that at the summary judgment stage, courts must draw all reasonable inferences and resolve conflicting evidence in favor of the non-

moving party). With this standard in mind, the facts set forth in this Memorandum are undisputed unless otherwise noted.

Mr. Walton, an African-American, accepted a position with Evergreen on December 15, 2005. Evergreen provides cargo handling services at various airports, and it hired Mr. Walton as a mechanic at its Philadelphia Airport location. The parties agree that, during the relevant time period for this litigation, Mr. Walton's immediate supervisor was Jack Bobst, and that Mr. Bobst was supervised by Dan Daly.

On August 31, 2006, Mr. Bobst gave Mr. Walton a written warning for failing to complete tasks in a timely manner, failing to complete work orders, and failing to lock up vans at nighttime. Mr. Walton admits that he failed to complete an assigned task on August 31, 2006, but has testified that he nonetheless believes Mr. Bobst wrote him up due to racial animus.

On April 11, 2007, Mr. Walton received a second written warning and a one-day suspension from Mr. Bobst for inconsistently completing paperwork. Two days later, Mr. Walton received a third written warning after Mr. Daly observed him smoking inside of a work van that contained cans filled with gasoline. Mr. Walton has testified that he believes this warning also arose from racial animus towards him, and that Mr. Daly previously told him that employees were allowed to smoke inside of work vans.

In May 2007, Evergreen officials informed Mr. Daly that he needed to reduce employee hours and staff at Evergreen's Philadelphia Airport location. On May 30, 2007, Mr. Daly informed Mr. Walton that he was being terminated due to this company downsizing. Evergreen also terminated Thomas Gunsenhouser, a Caucasian mechanic who worked at its Philadelphia location, but retained other Caucasian mechanics. Subsequent to these terminations, Evergreen

did not post advertisements for any open mechanic positions at its Philadelphia Airport location in 2007, but it did hire two Caucasian mechanics three years later, in 2010.

Mr. Walton filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on February 28, 2007, some three months before he was terminated from employment. However, Mr. Walton has testified that he never directly complained to Mr. Daly or anyone else at Evergreen about suffering racial discrimination or harassment. At his deposition, Mr. Daly stated that he did not know Mr. Walton filed an EEOC charge until after Mr. Walton was terminated by Evergreen.

**SUMMARY JUDGMENT STANDARD**

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the

absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**DISCUSSION**

Evergreen argues that the record presents no genuine issues of material fact as to whether it discriminated against Mr. Walton, harassed him, or subjected him to retaliation. The Court will address each of these arguments in turn.

I.     **Racial Discrimination**

Mr. Walton asserts racial discrimination claims under Title VII, § 1981, and the Pennsylvania Human Relations Act (PHRA). The parties agree that the familiar *McDonnell-Douglas* burden-shifting analysis applies to each of these claims. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (applying the Title VII analysis in *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792 (1973) to discrimination claims presented under § 1981 and the PHRA).

The *McDonnell Douglas* analysis proceeds as follows: (1) the plaintiff has the initial burden of establishing the *prima facie* elements of his discrimination claim; (2) if the *prima facie* elements are established, then the employer need only articulate a legitimate, non-discriminatory reason for the adverse employment action; and (3) if the employer does so, then the plaintiff must establish that the employer's articulated reason for taking the adverse action was actually pretext for unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 802-04.

  **A.** *Prima Facie Case*

A plaintiff generally may establish a *prima facie* discrimination claim by "showing that: (1) the plaintiff belongs to a protected class; (2) he/she was qualified for the position; (3) he/she was subject to an adverse employment action despite being qualified; and (4) under circumstances that raise an inference of discriminatory action, the employer continued to seek out individuals with qualifications similar to the plaintiff's to fill the position." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). Here, the parties agree that Mr. Walton belonged to a protected class, was qualified for his job, and was subjected to an adverse action upon his termination. However, Evergreen argues that Mr. Walton has not satisfied the fourth element of his *prima facie* claim.

In *Marzano v. Computer Sci. Corp.*, 91 F.3d 497 (3d Cir. 1996), the Third Circuit Court of Appeals held that "the fourth prong of the prima facie case should be relaxed when the employee's layoff occurred in the context of a reduction in force." *Id.* at 503 (internal quotation omitted). In such a situation, "it is sufficient to show that [the plaintiff] was discharged, while

the [employer] retained someone [outside the protected class]." *Id.*; *see also McCabe v. Voegele Mech., Inc.*, No. 02-7938, 2003 U.S. Dist. LEXIS 12526, at *12 (E.D. Pa. July 17, 2003) ("Plaintiff has put forth evidence sufficient to show that he was discharged in connection with a reduction in force and that other similarly-situated employees under forty were not discharged . . . I therefore conclude that Plaintiff has met his burden to set forth a prima facie case of age discrimination."). Here, Mr. Walton has produced evidence showing that Evergreen retained Caucasian mechanics even as it fired him. Therefore, he has established a *prima facie* case of race discrimination.

   **B.**   ***Employer Explanation and Pretext***

Because Mr. Walton has set forth a *prima facie* case, "the burden switches to [Evergreen], who must proffer an alternative explanation for treating [Mr. Walton] differently from those unprotected employees who were retained." *Marzano*, 91 F.3d at 509. Evergreen has advanced such an explanation. The parties agree that his Evergreen superiors directed Mr. Daly to reduce staff at its Philadelphia Airport location. *See* Docket No. 29-3, at ¶ 28. Moreover, Mr. Daly has testified that he chose to terminate Mr. Walton because Mr. Walton, who was written up for infractions on three separate occasions, was the worst performing mechanic in his unit. Under these facts, Evergreen has proffered a legitimate justification for Mr. Walton's termination.

The Third Circuit Court of Appeals has held that if a defendant produces a legitimate explanation for an adverse action, then a plaintiff can avoid summary judgment by identifying "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

6

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Here, Mr. Walton argues that a reasonable factfinder could disbelieve Evergreen's explanation of his termination for two reasons.

First, Mr. Walton notes that Evergreen's policy was to make employees laid off in 2007 eligible for rehire, and that a form filed by Evergreen upon his termination states that he was not eligible for rehire. However, Mr. Daly has stated that Mr. Walton was eligible for rehire, and that the form indicated otherwise because of a copying error. Moreover, "the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Maull v. Div. of State Police*, 39 F. App'x 769, 774 (3d Cir. 2002) (citation and quotations omitted). Therefore, Mr. Walton cannot raise a triable issue of pretext on this basis alone.

Second, Mr. Walton argues that Mr. Daly applied subjective criteria in deciding who to terminate during the 2007 layoff. However, Mr. Walton does not support this argument with any relevant citations to the record. *See* Docket No. 29, at 13. Moreover, Mr. Daly has testified that he decided which mechanics to terminate based on objective criteria, and that he looked at whether mechanics were written up and evaluated their work orders.[1]

Having failed to show that a factfinder could reasonably discredit Evergreen's stated reason for his termination, Mr. Walton alternatively argues that a jury could reasonably find "that

---

[1] Mr. Walton makes a related argument by contending that a jury could reasonably disbelieve Evergreen's proffered reason for his termination because Mr. Daly did not thoroughly review information pertaining to all the mechanics before deciding which mechanics to terminate. However, Mr. Daly has testified that he determined how many write-ups each mechanic had received before deciding who to terminate, and that he sought Mr. Bobst's opinion regarding each mechanic's performance.

7

an invidious discriminatory reason was more likely than not a motivating or determinative cause" of his termination. *Fuentes*, 32 F.3d at 764. This argument requires Mr. Walton to "point to evidence with sufficient probative force [such] that a factfinder could conclude by a preponderance of the evidence that [race] was a motivating or determinative factor" in his termination. *Simpson v. Kay Jewelers*, 142 F.3d 639, 644-45 (3d Cir. 1998). Here, while Mr. Walton has identified a surfeit of facts related to his case, none of them reasonably support the conclusion that Evergreen was motivated by race in terminating him.

To begin, Mr. Walton claims that Caucasian employees were treated more favorably than him because they were given access keys and he was denied such keys. However, Mr. Walton has testified that almost all of the mechanics who had keys were either supervisors or worked early morning shifts and needed a key to open Evergreen's facility. By contrast, Mr. Walton admits that he generally worked shifts that started at either 2:00 p.m. or 4:00 p.m., and thus was not similarly situated to employees who needed keys for supervisory reasons or to open Evergreen's facility. *See Norman v. Kmart Corp.*, No. 11-3560, 2012 U.S. App. LEXIS 13134, at *7 (3d Cir. June 27, 2012) (finding that the plaintiff failed to raise a triable issue of pretext even though other employees were treated more favorably, because those employees were not similarly situated to her); *Valentin v. Phila. Gas Works*, 128 F. App'x 284, 287 (3d Cir. 2005) (finding that the plaintiff "has not set forth sufficient evidence to establish pretext--he has not demonstrated that similarly situated white employees were treated differently than him").

Mr. Walton also argues that Evergreen treated white employees more favorably than him because Evergreen did not discipline those employees for smoking inside of work vans. However, Mr. Walton has not identified any evidence demonstrating that his supervisors knew

that white employees were smoking in vans.  Moreover, assuming *arguendo* that Evergreen knew that white employees were engaged in such behavior, Mr. Walton's only basis for asserting that they were not disciplined is that they never mentioned such discipline to him.  Mr. Walton has thus failed to produce evidence that he was treated differently than white employees in this regard.[2]

Mr. Walton next contends that a jury could find that Evergreen likely terminated him due to racial animus because, unlike Caucasian mechanics, he did not receive formal performance evaluations.  On this one issue, Mr. Walton has successfully identified a dispute of fact, because Mr. Daly testified at his deposition that his practice was to give mechanics performance evaluations, but subsequently submitted a declaration stating that Caucasian mechanics did not receive such evaluations.[3]  However, a reasonable jury could not find Evergreen's proffered reason for Mr. Walton's termination pretextual simply because Mr. Walton failed to receive a performance review.  *See Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life*, No. 10-3694, 2011 U.S. Dist. LEXIS 15377, at *1-3 (E.D. Pa. Feb. 16, 2011) (granting a motion to dismiss a race discrimination claim even though the complaint stated that Caucasian employees received performance reviews and the plaintiff did not).

Mr. Walton also argues that a triable issue of pretext exists because he was the most senior mechanic, and the only African-American mechanic, employed by Evergreen at the Philadelphia Airport.  However, "being the only minority employee in a department is not a

---

[2] Similarly, Mr. Walton argues that he had to complain to management to receive overtime pay, while Caucasian employees did not have to make such complaints.  However, his only basis for this assertion is that he never heard other workers complain about not receiving overtime pay.

[3] The parties appear to agree that Mr. Walton did not receive such an evaluation. Additionally, the declaration of Monique Gregory, Evergreen's Human Resources Manager, states that no such evaluations are in the personnel files of Caucasian mechanics.

'free-for-all' pass allowing a person to claim discrimination[.]" *Jackson v. Lehigh Valley Physicians Grp.*, No. 08-3043, 2010 WL 1630737, at *16 n.21 (E.D. Pa. Apr. 20, 2010). Moreover, Mr. Walton identifies no evidence suggesting that Evergreen typically considered seniority in making termination decisions, and thus fails to show that it deviated from its standard practices in terminating him.

Finally, Mr. Walton contends that Evergreen's stated reason for his termination was pretextual because it hired a pair of Caucasian mechanics three years after it fired him. A minority plaintiff cannot survive summary judgment on a race discrimination claim merely because he was, years later, replaced by a Caucasian employee. *See Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 214 n.3, 215 (3d Cir. 2011). Here, the passage of three years fundamentally calls into question the supposed "nexus" between Mr. Walton's discharge and the hiring of two new mechanics of a different race.

For the foregoing reasons, the Court will grant Evergreen's motion for summary judgment with respect to Mr. Walton's race discrimination claim.[4]

## II.    Hostile Work Environment

To establish a hostile work environment claim, Mr. Walton must show that a reasonable jury could find that "(1) he suffered intentional discrimination because of his race**;** (2) the discrimination was [severe or pervasive]; (3) the discrimination detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable person of the same [race] in that position; and (5) the existence of respondeat superior liability." *Livingston v. Borough of*

---

[4] Mr. Walton argues in a cursory footnote that he also can withstand summary judgment under a mixed motive analysis. Mixed motive theory "provides that discrimination exists if a plaintiff can show that race was a motivating factor for any employment practice." *Tucker v. Thomas Jefferson Univ.*, No. 11-1223, 2012 U.S. App. LEXIS 11467, at *7 (3d Cir. June 7, 2012) (citation and quotations omitted). Mr. Walton offers no evidence that race was a motivating factor in Evergreen's decision to terminate him.

*Edgewood*, 430 F. App'x 172, 177 (3d Cir. 2011).  In moving for summary judgment, Evergreen argued that Mr. Walton could not show that any harassment or discrimination he purportedly suffered occurred because of his race.  Mr. Walton's opposition to this argument consists of a single footnoted conclusory sentence that cites no record evidence and fails to contest the issue of whether he suffered harassment due to his race.  *See* Docket No. 29, at 11 n.13 ("Mr. Walton has offered evidence of conduct which is severe and/or pervasive, and he has evidence that the conduct not only negatively affected him but also would have affected a reasonable person.").  Mr. Walton has failed to show that a jury could reasonably find that any harassment he suffered was because of his race, and the Court will grant Evergreen's motion for summary judgment on this claim.

### III.   Retaliation

Finally, Mr. Walton brings retaliation claims under Title VII, § 1981, and the Pennsylvania Human Relations Act (PHRA).  The parties agree that the same analysis applies to Mr. Walton's retaliation claims under all three statutes.  Under that analysis, Mr. Walton may establish a *prima facie* retaliation claim by tendering evidence that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action."  *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citations and quotations omitted).  If Mr. Walton meets his burden at this stage, then "the familiar *McDonnell Douglas* approach applies in which the burden shifts to [Evergreen] to advance a legitimate, non-retaliatory reason for its conduct and, if it does so, [Mr. Walton] must be able to convince the factfinder both that [Evergreen's] proffered explanation was false, and

that retaliation was the real reason for the adverse employment action." *Id.* at 342 (citations and quotations omitted).

Here, Mr. Walton argues that he engaged in protected activity by filing an EEOC complaint and complaining about not having an access key, that he was subject to adverse employment actions when he was told to go home early, written up on two occasions, and terminated, and that a jury could reasonably find a causal connection between or among these events and circumstances. However, assuming *arguendo* that a reasonable jury could find that Mr. Walton has established a *prima facie* retaliation claim, Evergreen has set forth legitimate reasons for each of its allegedly adverse actions.[5] Mr. Walton makes no attempt to cast these proffered reasons as pretextual apart from directing the Court to the arguments he made in opposing summary judgment on his discrimination claims. *See* Docket No. 29, at 26 ("As set forth in detail above with respect to Plaintiff's race discrimination claim, Mr. Walton has adduced ample evidence of pretext.").[6] As noted above, Mr. Walton fails to show how a jury could reasonably disbelieve Evergreen's proffered reason for his termination. Because Mr. Walton has failed to make a factual showing "sufficient to establish the existence of an element essential to [his] case, and on which [he would] bear the burden of proof at trial," the Court grants summary judgment with respect to his retaliation claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Mills v. Phila. Gas Works*, No. 06-2444, 2007 U.S. Dist. LEXIS 52317, at \*15 n.25 (E.D. Pa. July 19, 2007) ("[E]ven if the plaintiff had properly exhausted[] his

---

[5] Specifically, Evergreen argues that it terminated Mr. Walton due to his poor performance, told him to go home early because he was screaming and cursing, and wrote him up for filing incomplete paperwork and smoking in a van that contained gasoline containers.

[6] Notably, Mr. Walton refers the Court to a section of his brief that argues Evergreen's proffered reason for his *termination* was pretextual. At no point in his brief does Mr. Walton contend that Evergreen's justifications for the other allegedly adverse actions – being sent home early once and written up twice – are pretextual.

retaliation claims[, they] would still fail for the same reason as the racial discrimination claims . . . Assuming the plaintiff could establish all three elements [of a *prima facie* retaliation claim], he still cannot show that [the defendant's] non-discriminatory reason for not promoting him was pretextual."), *aff'd*, 264 F. App'x 239 (3d Cir. 2008).

**CONCLUSION**

For the foregoing reasons, the Court will grant Evergreen's motion for summary judgment.  An Order to this effect follows.

BY THE COURT:


  /s/  Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE